### No. 2473
### Second Circuit

## BREWSTER & ROACH v. WILBUR HAMILTON

(December 1, 1925, Opinion and Decree.)
(See pp. 105 and 182 herein.)

*(Syllabus by the Editor.)*

1.   **Louisiana Digest—Evidence—Par. 53, 60, 344.**

The burden of proof is on the plaintiff who alleges a verbal contract with defendant by which defendant agreed to pay for anything which his laborers should order from the plaintiff, to prove the contract. Defendant's sworn denial of this unbusiness-like contract together with other circumstances make it necessary to give judgment for the defendant.

2.   **Louisiana Digest—Appeal—Par. 564.**

Defendant who does not appeal from the decision of the trial court or move to amend the judgment in the Court of Appeal cannot be granted any relief even though the proof justified his claim.

Appeal from the Third Judicial District Court of Louisiana, Parish of Union, Hon. S. D. Pearce, Judge.

This is a suit to collect the price of goods furnished to defendant and his laborers. There was judgment for plain-

tiff for the amount furnished defendant which defendant admitted but judgment against plaintiff for the amount of goods purchased by defendant's laborers. Plaintiff appealed.

Judgment affirmed.

Elder, Thompson & Digby, of Ruston, attorneys for plaintiffs, appellants.

H. E. Dawkins, of Ruston, attorney for defendant, appellee.

CARVER, J.    Plaintiffs sue defendant for $157.50, alleged to be for goods sold and delivered to him during the years 1923 and 1924, as more fully shown by itemized accounts attached to the petition.

The accounts so attached are as follows:

One against defendant himself, $44.75.

One, Wilbur Hamilton, by Ross Hase, beginning April 2, 1923, and running to November 27, 1923, aggregating $48.10; less a credit of $26.00 without date; balance, $22.10.

One, Wilbur Hamilton, by Criss Woods, beginning April 1, 1923, and running to February 23, 1924, aggregating $72.55, without any credits.

One, Wilbur Hamilton, by Alf Hammons, beginning April 15, 1923, and running to July 3, 1923, $18.10.

Total, $157.50.

Defendant admits the $44.75 personal account but denies liability for the rest.

At the trial, Dan Brewster, one of the plaintiffs testified as follows:

"Q. With reference to the account in suit No. 8159, Brewster & Roach vs. Wilbur Hamilton, I will ask you whether or not Wilbur Hamilton, the defendant, authorized your firm to deliver the goods covered by this account to persons included on the account and charge the amounts indicated against him, Mr. Wilbur Hamilton?
"A. Yes, sir."

On cross-examination he testified:

"Q. Now, as to Mr. Wilbur Hamilton, I notice you have the names of three parties in addition to his; were those all darkies living on his place?
"A. Yes, sir, I think they were
"Q. I believe you said that he also told you to let his darkies have stuff?
"A. Yes, sir.
"Q. Where was he when he told you that?

"A. There at the store.
"Q. Do you remember about what time it was?
"A. No sir; I don't remember.
"Q. Do you remember who was present when he told you?
"A. Yes, sir; I think I do.
                    *    *    *
"Q. Who was present when Mr. Wilbur Hamilton told you that?
"A. Mr. J. L. Smith.
"Q. He was present when Mr. Wilbur Hamilton told you to let his darkies have anything they wanted? .
"A. Yes, sir.
"Q. When was this?
"A. Some time the last of January or early February.
"Q. Had you not at that time let some of his darkies have anything on account?
"A. No, sir; I think not.
"Q. You started at that time?
"A. Yes, sir.
"Q. Did you ever submit Mr. Hamilton a statement of what his darkies were getting from time to time?
"A. No, sir; not until fall."

Roach, the other plaintiff, does not claim himself to have received any authority from defendant to sell his laborers goods on his account. He testified as follows:

"Q. When did Wilbur Hamilton tell you he would pay?
"A. Wilbur hasn't told me that.
"Q. You just charged them to him without any authority of any kind?
"A. Through Brewster."

J. L. Smith testified that he was present when defendant told Brewster to let his darkies have supplies and charge the amount to him and that this was in Brewster & Roach's store.

On cross-examination he testified:

"Q. Do you remember what Mr. Hamilton said?

"A. He told Mr. Brewster to let his negroes have some stuff.

"Q. Which negroes?

"A. I don't know the names.

"Q. Were the negroes there at that time?

"A. No, sir.

"Q. Did he call the names of the negroes?

"A. No, sir.

"Q. Just said let them have some stuff, did he name the stuff he wanted them to have?

"A. No, sir.

"Q. Did he say let them have some stuff?

"A. He said let them have the stuff they need.

"Q. Are you sure that is what he said?

"A. That is what I understood.

"Q. Which did you understand; you said at first some stuff; did he say all they needed or what?

"A. I don't remember.

"Q. You don't remember whether he called over any items the stuff he wanted them to have or not?

"A. No, sir, he didn't call any item.

"Q. You wouldn't swear he didn't?

"A. I would swear he didn't itemize it.

"Q. Did he go on to tell them to let them have stuff now and any time they wanted it?

"A. No, sir.

"Q. What did you understand from what he said?

"A. Let them have stuff as they called for it and needed it."

Further along he says this was in early spring and that he did not remember if any one else was present besides plaintiff and defendant and himself or not.

J. W. Haile testified that he was collector for plaintiffs and

"Q. Did you at any time talk to Mr. Wilbur Hamilton?

"A. Yes, sir.

"Q. What conversation did you have with him about his account?

"A. The first conversation I had with Mr. Wilbur Hamilton I told him I had an account against him and he said he had

got a check and stated how much some $300.00 above $300.00 and when he got it cashed he would take the matter up with the boys.

"Q. Did you ever see him any more about it?

"A. Yes, sir; later I did.

"Q. What did he say then?

"A. He said 'I am going to Monroe tomorrow and when I come back I will see them'.

"Q. Did he ever see you and pay the account?

"A. No, sir.

"Q. Did he make any objection to the legality of the account by reason of its being an account for goods gotten by his hands?

"A. In one account he made some complaint.

"Q. As to the rest he didn't?

"A. No, sir.

"Q. Which one was that if you remember?

"A. It was a wage hand; I think may be it was Rass."

He says he did not have an itemized account but just a statement on the day book.

He says this was a few days before Christmas. He does not state what year but we gather it was 1924.

Though Brewster says the arrangements for the advances were made in late January or early February and that he then started the advances, the accounts themselves show that they did not begin until April 1, April 2, and April 15, respectively.

An inspection of the accounts shows that on those for Hase and Crise Woods there was a relatively small amount of provisions, $10.90 out of $48.10 on the Hase account, and $25.65 out of $72.55 on the Woods account. On the Hase account appear, amongst other items, the following:

Union suit, $3.00.

Umbrella, $2.00

5 yards of pongee, $3.75.

1 pair of hose, $1.50.

1 pair of socks, 75 cents.

The accounts run, that for Hase to November 27, 1923; that for Woods to February 23, 1924; and that for Hammons to July 3, 1923.

As shown above, Brewster testified that he did not submit to defendant a statement of what the darkies were getting until fall. He does not say which fall, but we gather it was in 1924.

Defendant denied telling plaintiff to advance his hands and says he did so himself, giving Woods $7.50 to $10.00 every two weeks and Hammons $10.00 every two weeks, and that Hase worked for wages. He says that his first knowledge of the plaintiffs' claim was when Haile came to collect.

The plaintiffs' theory is that defendant gave his hands, including those working for wages and presumably paid by the week, that being the custom of the country, cart blanche to get whatever they chose without limit of time or amount, without mentioning the names of the parties so favored and without inquiring as they went along how these parties were using this extraordinary privilege; and this, too, while advancing them himself what he thought their crops warranted.

Although Brewster is corroborated to some extent we do not regard the proof sufficient to establish against defendant's positive testimony so unusual and unbusinesslike a contract.

Brewster and Smith may be perfectly sincere in their belief that defendant gave such a blank order, but the question is not whether they understood him to do so but whether he did so; and we cannot believe, without more proof than is here presented, that he did.

As to Smith, he was testifying more than two years after the alleged conversation; was not interested in the matter talked about between Hamilton and Brewster, and may well be mistaken in his recollection of what occurred.

As to Brewster, his testimony shows that his recollection is not very good. As mentioned above, he stated several times the arrangement was made in 1922, but afterwards corrected it, saying it was in 1923, as he only started in business in 1923.

He also said that he started in the advancing at the time of making the arrangements, although the accounts show that they did not begin until more than two months after the date he fixes for the arrangements.

He was also asked whether defendants or any of them had traded with his firm on the same basis for any previous year other than that shown on the account and whether they had settled up without any controversy, and he answered "Yes, sir".

It should be stated here that this suit was consolidated for trial in the lower court with suits by the same plaintiffs against Fred Hamilton and Joe Hamilton and the defendants meant in the foregoing question were all three of the Hamiltons.

He could not have had such dealings, though, as asked about in this question in any previous year because all the accounts are for 1923 and later, and he was not in business in 1922.

Although there was consolidation in the lower court and only one trial, we are rendering separate opinions in each case because the facts are slightly different in each.

As to Haile, who was collecting for the plaintiffs and who probably had other accounts besides the Hamiltons' for collec-

tion, it is not likely that he could remember accurately what the various parties told him when he presented claims. His version of what occurred between him and each of the defendants is different from what they claim, which is but natural from persons testifying as to their recollection of conversations. The law justly regards such admissions as Haile testified to as the weakest kind of evidence.

It might be argued that plaintiffs have a numerical preponderance of testimony, having two witnesses to defendant's one as to the contract besides such corroboration as Haile's testimony gives. But this case, as said above, was consolidated with the other two and contracts similar to the one here involved were testified to as to the other two who denied them as does the defendant in this case. In a sense there were three witnesses for defendant. Not, indeed, three to the precise contract itself, but to a similar contract, and we think the testimony of each of these three defendants received in this view some support from that of the other two.

The district judge decided in favor of the defendant, so far as the claims against the laborers were concerned, and we think correctly. He gave judgment against defendant for his personal account, and this is not disputed. He disallowed the plea of tender for the amount of this personal account which, the defendant says, should have been sustained, but as he does not appeal from the decision or move to amend the judgment in this court, this relief could not be granted even did the proof justify his claim, concerning which we express no opinion. Defendant also claims that inasmuch as practically all the testimony was taken concerning the laborers' accounts, plaintiff should be taxed with the costs. This relief, too, must be denied for the reason above given.

Judgment affirmed.

No. 2472

Second Circuit

